UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

SUPER EQUITIES HOLDINGS LLC and
SUPER EQUITIES LLC,

        Plaintiffs,

  v.

ETEKCITY CORP. and AROVAST CORP.,

        Defendants.

-------------------------------------------------------------- x

**Civil Action No. 22-cv-9323**

**<u>COMPLAINT AND JURY TRIAL
DEMAND</u>**

*Electronically Filed*

   Plaintiff Super Equities Holdings LLC ("SEH") and Super Equities LLC ("Super Equities") (collectively, "Plaintiffs"), by and through their counsel, hereby brings this Complaint against Etekcity Corp. ("Etekcity") and Arovast Corp. ("Arovast") (collectively, "Defendants"), and alleges as follows:

## PARTIES

   1.   Plaintiff SEH is a limited liability company existing under the laws of the State of New York, with an address at 2 Warren Court, Monsey, New York 10952.

   2.   Plaintiff Super Equities is a limited liability company existing under the laws of the State of New York, with an address at 2 Warren Court, Monsey, New York 10952.

   3.   On information and belief, Defendant Etekcity is a corporation existing under the laws of the State of Iowa, with its principal place of business at 1202 N Miller Street, Unit A, Anaheim, California 92806.

   4.   On information and belief, Defendant Arovast—a sister company of Defendant Etekcity—is a corporation existing under the laws of the State of California, with its principal place of business at 1202 N Miller Street, Unit A, Anaheim, California 92806.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action pursuant to the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331 and 1338. This Court also has supplemental jurisdiction over any claims herein arising under the laws of the State of New York pursuant to 28 U.S.C. § 1367 because the claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

6.      Furthermore, Defendants are subject to specific jurisdiction in this Court, *inter alia*, because they conduct systemic and continuous business within this District and have committed at least some of the acts complained of herein within this District.

7.      On information and belief, Defendants do business in the State of New York and sell large quantities of various products, including consumer products, to customers in New York.

8.      On information and belief, Defendants solicit business from and conduct business with New York residents by using the internet (through one or more fully interactive websites) to sell consumer goods to customers in New York, by accepting payments from New York residents, and by delivering infringing goods to residents of New York.

9.      Each of the Defendants have purposely directed their activities, including the illegal acts against Plaintiffs described below, toward this District and this action arises from those activities.

10.     Specifically, at all relevant times, Defendants were aware that Plaintiffs resided in the District of New York and that their illegal acts would cause harm to Plaintiffs in New York. Plaintiff SEH's trademark registration identifies SEH as a New York company with a place of

business in Monsey, New York and Plaintiff Super Equities's Amazon storefront identifies Super Equities's place of business in Monsey, New York.

11.     On information and belief, Defendants' illegal acts against Plaintiffs described below were made to further Defendants' transaction of business in New York by improperly excluding a New York competitor, Plaintiff Super Equities, from conducting business in New York.

12.     Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

**FACTUAL BACKGROUND**

13.     Plaintiff Super Equities is a seller of consumer products, including, most notably, its humidifiers sold under the mark AQUAOASIS ("the AquaOasis Humidifiers"). Super Equities has been licensed by Plaintiff SEH to market and sell humidifiers bearing the AQUAOASIS trademark since 2020.

14.     Since at least as early as November 4, 2020, Super Equities has continuously and exclusively used and advertised the mark AQUAOASIS ("AQUAOASIS Mark") in connection with humidifiers.

15.     SEH is the owner of both common law and federal trademark rights in the AQUAOASIS Mark, including U.S. Trademark Registration No. 6,382,195 for the mark AQUAOASIS in relation to Class 11 goods, namely, "humidifiers" ("the AQUAOASIS Registration"). The AQUAOASIS Registration is in full force and effect and has never been abandoned.

16.     Plaintiffs' rights in the AQUAOASIS Mark extend to any use of, *inter alia*, confusingly similar marks which are used on or in connection with related goods or services.

17.     Plaintiff Super Equities sells its AquaOasis Humidifiers through the website located at www.aquaoasis.com, as well as through its "Super Equities" storefront on Amazon.com.

18.     On information and belief, Amazon is the world's largest online retailer.

19.     According to published reports, "Amazon's market cap alone is bigger than the nine biggest U.S. retailers put together." Dorothy Neufeld, *Visualizing the Size of Amazon, the World's Most Valuable Retailer*, Visual Capitalist (July 2, 2020), https://www.visualcapitalist.com/amazon-worlds-most-valuable-retailer/.

20.     Amazon's online e-commerce platform allows for third parties, like Super Equities, to sell products on its e-commerce platform.

21.     The privilege of selling on Amazon is highly advantageous, as Amazon provides third parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

22.     Accordingly, Super Equities has invested significant efforts not only into building a successful and reputable Amazon storefront, but also in promoting and developing the AquaOasis Humidifiers and its corresponding Amazon listings.

23.     Indeed, since the formation of its "Super Equities" Amazon storefront, Super Equities has served thousands of customers and holds a lifetime 100% positive rating.

24.     Moreover, through Plaintiffs' continuous use of the AQUAOASIS Mark and the commercial success of the AquaOasis Humidifiers, the AQUAOASIS Mark has garnered substantial goodwill and identifies and distinguishes Plaintiffs' high-quality humidifiers sold by Super Equities. The public has come to know that humidifiers marketed under the AQUAOASIS Mark are of the highest quality.

25.     The AQUAOASIS Mark has, therefore, become a valuable vehicle for the further development of Plaintiffs' goodwill. This goodwill and recognition constitute some of Plaintiffs' most valuable assets. Accordingly, the integrity of the AQUAOASIS Mark is extremely valuable to Plaintiffs and is crucial to the continued vitality and growth of its business.

26.     As a result of Plaintiffs' efforts and the goodwill established in the AQUAOASIS Mark, the AquaOasis Humidifiers are highly successful on Amazon.com. In fact, the AquaOasis Humidifiers are currently—and have been for at least the past 20 consecutive months— Amazon's "#1 Best Seller" in the Humidifier category, as indicated by the orange "Best Seller" badge displayed on Super Equities' listings:



*See* https://www.amazon.com/AquaOasisTM-Humidifier-Ultrasonic-Humidifiers-Bedroom/dp/B08FKYJHCF/ref=sr_1_5?crid=28XBXC157LXJH&keywords=humidifier&qid=1 666195901&qu=eyJxc2MiOiI3LjE4IiwicXNhIjoiNi41MSIsInFzcCI6IjYuMDUifQ%3D%3D&s prefix=humidifier%2Caps%2C66&sr=8-5.



*See* https://www.amazon.com/s?k=humidifier&crid=28XBXC157LXJH&sprefix=humidifier%2Caps%2C66&ref=nb_sb_noss_1.

27.     The "Best Seller" badge is awarded to the top selling products within a specific product category or subcategory. This recognition not only gives legitimacy to a product and allows customers to make a well-informed purchasing decision, but also results in more impressions, higher conversions, higher rankings, and ultimately higher profits, for the seller.

## Defendants' Infringing Activities

28.     On information and belief, Defendants have engaged in a pattern of deceptive and anti-competitive practices by manipulating the Amazon.com website to cause its products to be listed proximately to AquaOasis products. Defendants have also appropriated the goodwill represented by the AQUAOASIS Trademark by using the term OASIS—the prominent feature of the AQUAOASIS mark—on identical products.

29.     On information and belief, Defendants are competing providers of consumer goods, including humidifiers.

30.     On May 25, 2021, over six months after the date of first use of the AQUAOASIS Mark and nearly a year after the application for the AQUAOASIS Registration was filed, Defendant Etekcity filed U.S. Trademark Application Serial Nos. 90/733,989 ("the '989 Application") and 90/734,000 ("the '000 Application") on the basis of an intent to use the marks LEVOIT OASISMIST and LEVOIT OASIS MIST PRO (the "Infringing Marks") in relation to identical goods, i.e., humidifiers. The '989 and '000 Applications are currently pending.

31.     The U.S. Patent and Trademark Office ("USPTO") issued a Notice of Allowance for the '989 Application on July 12, 2022. On September 13, 2022, Defendant Etekcity filed a statement of use alleging August 9, 2022 as the date of first use of the mark LEVOIT OASISMIST in connection with humidifiers.  As of the filing of this Complaint, the USPTO has not yet issued a registration for the '989 Application, but has accepted Etekcity's statement of use and stated that the registration certificate will issue in due course.

32.     Defendants' humidifiers, including those sold under the Infringing Marks (the "Accused Products"), are available for purchase online (e.g., https://levoit.com/collections/humidifiers-diffusers) and on Amazon.com under Amazon Standard Identification Number ("ASIN"): B0B1DQ8KV3  (see e.g., https://www.amazon.com/LEVOIT-OasisMist-Humidifiers-Customized-Ultrasonic/dp/B0B1DQ8KV3/ref=sr_1_1_sspa?crid=2V0NG1QJT77RF&keywords=LEVOIT+OASIS+MIST&qid=1666621958&qu=eyJxc2MiOiIwLjYxIiwicXNhIjoiMC4wMCIsInFzcCI6IjAuMDAifQ%3D%3D&sprefix=levoit+oasis+mist+%2Caps%2C52&sr=8-1-spons&psc=1).

33.     Defendant Arovast, owner of the "Arovast" Amazon storefront, represents that it is "the official storefront for the Levoit…brand[]."

(https://www.amazon.com/sp?ie=UTF8&seller=ATP9TY1LFOVGB&asin=B07C6MKN5H&ref_=dp_merchant_link&isAmazonFulfilled=1).

34.     The Infringing Marks are confusingly similar to the AQUAOASIS Mark. The Infringing Marks mimic the dominant, distinctive component of the AQUAOASIS Mark, primarily the use of the term "OASIS," in connection with humidifiers.

35.     Not only are the goods offered for sale and sold by Defendants under the Infringing Marks related or identical to the goods sold by Plaintiffs under the AQUAOASIS Mark, Defendants' humidifiers are sold in the same channels of commerce and found in the same marketing environment, oftentimes side-by-side on the same webpage on Amazon.com.

36.     Plaintiffs' rights in the AQUAOASIS Mark long pre-date any use of the Infringing Marks by Defendants.

37.     There is no affiliation of any kind between Plaintiffs and Defendants. Plaintiffs have no control over Defendants' use of the Infringing Marks or the nature or quality of the products advertised, promoted, and offered for sale by Defendants.

38.     Given the substantial similarity between the AQUAOASIS Mark and the Infringing Marks in connection with identical goods, consumers familiar with Plaintiffs' goods are likely to assume, incorrectly, that Defendants' goods provided under the Infringing Marks originated with Plaintiffs or that there is an affiliation between the parties, or that Plaintiffs have sponsored, endorsed, or approved Defendants' goods, when in fact there is no affiliation, connection, or association.

39.     Defendants' offer for sale and sale of identical goods in connection with the unauthorized use of the Infringing Marks—thereby representing to customers that the products they are selling are the same as those advertised, marketed, promoted, offered for sale, and sold by Plaintiffs—falsely designates the source of the goods in a manner that is likely to cause confusion, mistake, or deception among consumers as to the origin, sponsorship, or approval of these goods, and improperly trades off the goodwill established by Plaintiffs.

40.     On September 15, 2022, after Defendants' actions were brought to Plaintiffs' attention, Plaintiffs, through counsel, demanded that Defendants abandon the Applications and cease any use and/or plans to use, the Infringing Marks. As of the time of filling the instant Complaint, Plaintiffs have not received a response and Defendants continue to promote, offer, and sell products under the Infringing Marks.

41.     Accordingly, Defendants, by the acts complained of herein, have intentionally and willfully infringed and continue to infringe the AQUAOASIS Mark, and otherwise improperly usurp the reputation and goodwill of Plaintiffs to promote their competitive products, which are not connected with, authorized, approved, licensed, produced, or sponsored by Plaintiffs.

42.     The natural, probable and foreseeable results of Defendants' wrongful conduct have deprived, and will continue to deprive, Plaintiffs of the benefit of its right to use the AQUAOASIS Mark and the associated goodwill.

43.     The aforesaid acts of Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable damage, loss, and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## Defendants' False Advertising

44.     As stated above, on information and belief, Defendants are competing providers of humidifiers that are available for purchase on Amazon.com.

45. Under Amazon's Seller Code of Conduct, sellers are required to "act fairly and honestly on Amazon to ensure a safe buying and selling experience," including by "provid[ing] accurate information to Amazon and [] customers" such as "list[ing] [] products in the correct category." (https://sellercentral.amazon.com/help/hub/reference/G1801).

46. However, on information and belief, in violation of Amazon's policies, Defendants have intentionally falsely listed its humidifiers under incorrect and misleading categories for the sole purpose of manipulating Amazon and its consumers to believe that Defendants' humidifiers are "Best Sellers."

47. For example, Defendants have intentionally misidentified their humidifiers as "Humidifier Accessories" and "Humidifier Parts and Accessories" by listing the humidifiers for sale under these lower-sales volume product subcategories. As a result of selling in a product subcategory with less competition, Defendants' humidifiers are easily able to outsell, e.g., humidifier accessories that are less in demand, causing Defendants' humidifiers to receive an unearned "Best Seller" badge.

48. By falsely categorizing its humidifiers, Defendants have manipulated Amazon search results to misleadingly represent that its humidifiers are the "Best Seller" ***humidifier***, when, in fact, the "Best Seller" status is a result of Defendants' category manipulation—and not the result of actual humidifier sales.

49. For example, the search results for "humidifier" on Amazon.com appear as follows:



*See* https://www.amazon.com/s?k=humidifier&crid=28XBXC157LXJH&sprefix=humidifier%2Caps%2C66&ref=nb_sb_noss_1.

50.    However, in reality, Defendants' humidifier (ASIN: B09W21XFS5), shown in the

above example, is merely the "#1 Best Seller" in "Humidifier Parts & Accessories":



*See* https://www.amazon.com/LEVOIT-Humidifiers-Bedroom-Diffuser-Humidification/dp/B09W21XFS5/ref=sr_1_7?crid=1KNGTD0V232F3&keywords=humidifier&qid=1666195769&qu=eyJxc2MiOiI3LjE4IiwicXNhIjoiNi41MSIsInFzcCI6IjYuMDUifQ%3D%3D&sprefix=humidifier%2Caps%2C73&sr=8-7.

51.     A visual illustration of Defendants' ploy is shown below, whereby an Amazon results page listing "Humidifier ***Parts & Accessories***" shows an actual LEVOIT humidifier in the first position among true humidifier *accessories* such as filters and the like.



52.     As a result of Defendants' intentional misstatements and false categorization of its humidifiers, consumers are deceived and confused into believing that Defendants' humidifiers are the "#1 Best Seller" humidifier, when, in fact, they are not.

53.     Because many consumers rely upon the "Best Seller" designations to make purchasing decisions, consumers are led to erroneously purchase Defendants' humidifiers, believing that they are the "Best Seller" humidifier.

54.     Moreover, on information and belief, Defendants further knowingly manipulate Amazon listings for their humidifiers in order to misleadingly show inflated and unwarranted reviews for its products. Defendants do this by listing new products as "variations" of pre-existing products, instead of creating new listings for new products.

55.     In particular, Amazon allows sellers to create "child" listings off of a "parent" listing where a child product is substantially the same as the parent, and only differs in attributes such as size or color.

56.     Defendants, instead, attach unrelated products to existing listings in order to cause the reviews from a prior product extend to the new, unrelated product.

57.     For example, a listing for Defendants' infringing LEVOIT OasisMist Smart Cool and Warm Mist Humidifier ("Smart Warm&Cool Humidifier") (ASIN: B0B1DQ8KV3) is shown below.  As noted, the Smart Warm&Cool Humidifier is the sixth different product variation:



58.     As documented by Amazon, the Smart Warm&Cool Humidifier was first available on August 9, 2022 (see below):

| | |
|---|---|
| Model Name | OasisMist Smart Cool and Warm Mist Humidifiers for Bedroom Large Room Home, |
| Product Dimensions | 10.8"D x 6"W x 11.97"H |
| Included Components | 1 × User Manual, 3 × Absorption Pad (1 Pre-Installed), 1 × Cleaning Brush, 1 × 4.5-Liter Smart Warm & Cool Mist Humidifier, 1 × Quick Start Guide, 3 × Aroma Pad (1 Pre-Installed), 2 × Water Filter Sponge (1 Pre-Installed) |
| Power Source | ETL Certified AC Power Adapter |
| Control Method | App |
| Shape | Rectangular |
| Product Dimensions | 10.8 x 6 x 11.97 inches |
| Item Weight | 7 pounds |
| Manufacturer | LEVOIT |
| ASIN | B0B1DQ8KV3 |
| Country of Origin | China |
| Item model number | LUH-O451S-WUS |
| Customer Reviews | ★★★★⯪ ⌄   23,853 ratings<br>4.5 out of 5 stars |
| Best Sellers Rank | #350 in Home & Kitchen (See Top 100 in Home & Kitchen)<br>#5 in Humidifiers |
| Date First Available | August 9, 2022 |

59.    Despite its product being first listed on August 9, 2022, however, the reviews on the product page go back as early as 2019– fully 3 years prior to the date the Smart Warm&Cool Humidifier was first available.

60.     As a result of Defendants' intentional manipulation of Amazon listings for their humidifiers, consumers are deceived and confused into believing that Defendants' humidifiers have amassed thousands of positive reviews and high ratings, when, in fact, such reviews and ratings merely relate to a prior product.

61.     Defendants' actions are likely to, or already have and will continue to, detrimentally impact Plaintiffs' commercial and business reputation, as well as Super Equities' sales of the AquaOasis Humidifiers on Amazon.com—a significantly profitable portion of Super Equities' business.

62.     The aforesaid acts of Defendants have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable damage, loss, and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114 — Against All Defendants)

63.     Plaintiffs reallege and incorporate all previous paragraphs.

64.     SEH owns valid, protectable rights in the AQUAOASIS Mark covered by the AQUAOASIS Registration, which it licenses to Super Equities, and which are superior to any rights Defendants may claim to have in the Infringing Marks for humidifiers.

65.     Defendants' unauthorized use of the Infringing Marks is likely to cause confusion and mistake with the AQUAOASIS Mark, and is likely to deceive the public as to the approval, sponsorship, affiliation, connection, license, source, origin, or association of Defendants' products and commercial activities with Plaintiffs.

66.     On information and belief, Defendants have deliberately and willfully attempted to trade upon Plaintiffs' goodwill in the AQUAOASIS Mark and the reputation established by

Plaintiffs in connection with the AquaOasis Humidifiers in order to confuse consumers as to the origin and sponsorship of Defendants' goods.

67.     On information and belief, Defendants have profited and been unjustly enriched, and will continue to profit and be unjustly enriched, by sales and publicity that Defendants would not otherwise have obtained but for their unlawful conduct.

68.     Defendants' deceptive acts have injured or are likely to injure Plaintiffs' business and reputation with consumers in this judicial district and elsewhere in the United States by creating confusion about the source of the AQUAOASIS Mark.

69.     As a proximate result of Defendants' infringement of the AQUAOASIS Mark, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury and damage to the goodwill associated with the AQUAOASIS mark.

70.     Plaintiffs are entitled to injunctive relief and damages in an amount to be determined at trial.

### COUNT II –UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a) — Against All Defendants)

71.     Plaintiffs reallege and incorporate all previous paragraphs.

72.     By their infringement of the AQUAOASIS Mark without the consent or authorization of Plaintiffs as described above, Defendants have falsely designated the origin of Defendants' products, and Defendants have thereby competed unfairly with Plaintiffs and engaged in acts of false designation of origin and false sponsorship, in violation of 15 U.S.C. § 1125(a), as amended.

73.     Defendants' acts described above have caused and will continue to cause injury and damages to Plaintiffs, and have caused and will cause irreparable injury to Plaintiffs'

goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

74.     As a direct result of Defendants' infringement, Plaintiffs have suffered and will continue to suffer damages, irreparable harm and impairment of the value of the AQUAOASIS Mark, and great detriment to their business, goodwill, reputation and profits.

75.     Plaintiffs are entitled to injunctive relief and damages in an amount to be determined at trial.

76.     The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

## COUNT III – FALSE ADVERTISING
### (15 U.S.C. § 1125(a)(1)(B) — Against All Defendants)

77.     Plaintiffs reallege and incorporate all previous paragraphs.

78.     In connection with their advertising and promotion of humidifiers, Defendants have made false or misleading descriptions of fact, or misrepresentations of fact, concerning the nature, characteristics, qualities, and origin of the humidifiers.

79.     Defendants have intentionally listed their humidifiers under incorrect product subcategories on Amazon.com.

80.     By falsely categorizing their humidifiers in a product category with less competition, Defendants have manipulated the Amazon listings to misleadingly represent that the humidifiers are the "Best Seller" humidifier.

81.     In reality, the "Best Seller" status is a result of Defendants' category manipulation, and not the result of actual humidifier sales.

82.     As a result of Defendants' intentional misstatements and false categorization of their humidifiers, consumers are deceived and confused into believing that Defendants' humidifiers are the "#1 Best Seller" humidifier.

83.     Because many consumers rely upon the "Best Seller" designations to make purchasing decisions, consumers are led to erroneously purchase Defendants' humidifiers, believing that they are the "Best Seller" humidifier when, in fact, they are not.

84.     Defendants further knowingly manipulate Amazon listings for their humidifiers in order to show inflated and unwarranted reviews for its products by misleadingly listing new products as "variations" of pre-existing products, instead of creating new listings for new products.

85.     As a result, consumers are deceived and confused into believing that Defendants' humidifiers have amassed thousands of positive reviews and high ratings, when, in fact, such reviews and ratings merely relate to a prior product.

86.     Plaintiffs have invested significant capital in developing and promoting the AquaOasis Humidifiers and corresponding Amazon listings, and are being substantially harmed by Defendants' unfair business practices and false advertising to consumers.

87.     Defendants' actions are likely to, or already have and will continue to, detrimentally impact Plaintiffs' commercial and business reputation, as well as Plaintiffs' sales of the AquaOasis Humidifiers on Amazon.com.

88.     The aforesaid conduct of Defendants is causing irreparable injury to Plaintiffs, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court. Plaintiffs has no adequate remedy at law.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION
### (Against All Defendants)

89.     Plaintiffs reallege and incorporate all previous paragraphs.

90.     Defendants' infringement of the AQUAOASIS Mark, as described above, constitutes trademark infringement, passing off and unfair competition in violation of common law.

91.     Defendants' false categorization of its humidifiers in product categories with less competition, and unfair manipulation of Amazon listings by using old listings for unrelated new products in order to show inflated and unwarranted reviews for the new products, constitutes unfair competition in violation of common law.

92.     Defendants' acts of common law trademark infringement, passing off and unfair competition, as described above, have caused and will continue to cause injury and damages to Plaintiffs, and have caused and will continue to cause irreparable injury and loss to Plaintiffs'sgoodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

93.     Defendants acted in bad faith, with full knowledge of Plaintiffs' rights to the AQUAOASIS Mark and without regard to the likelihood of confusion of the public created by Defendants' activities.

94.     Defendants' actions demonstrate an intentional, willful, and malicious intent to misappropriate Plaintiffs' trademark rights and trade on the goodwill associated with the AQUAOASIS Mark to the great and irreparable injury of Plaintiffs.

95.     Defendants' conduct has been intentional and willful and in conscious disregard of Plaintiffs' rights and, therefore, Plaintiffs are entitled to damages.

**COUNT V – REFUSAL OF THE '989 APPLICATION OR
CANCELLATION OF ANY REGISTRATION RESULTING THEREFROM
(Against Defendant Etekcity)**

96.     Plaintiffs reallege and incorporate all previous paragraphs.

97.     Refusal of the '989 Application (or cancellation of any registration that results therefrom) for the LEVOIT OASISMIST word mark is warranted, appropriate, and necessary because the mark is likely, when used on or in connection with the applied for goods, namely, "Humidifiers; Humidifiers for household purposes; Air humidifiers," to cause confusion, cause mistake, or to deceive with respect to Plaintiffs' senior AQUAOASIS Mark.

98.     Plaintiffs have standing to seek refusal of the '989 Application (or cancellation of the registration that results therefrom) for the LEVOIT OASISMIST mark because Plaintiffs have senior trademark rights in the AQUAOASIS Marks, and Defendants' attempted registration of the infringing LEVOIT OASISMIST mark is likely to cause consumer confusion as to the source of Defendants' goods with Plaintiffs.

99.     Pursuant to 15 U.S.C. §§ 1052, 1064, and 1119, Plaintiffs request an order of this Court refusing the '989 Application (or cancelling the registration that results therefrom).

**COUNT VI – REFUSAL OF THE '000 APPLICATION
(Against Defendant Etekcity)**

100.    Plaintiffs reallege and incorporate all previous paragraphs.

101.    Refusal of the '000 Application for the LEVOIT OASIS MIST PRO word mark is warranted, appropriate, and necessary because the mark is likely, when used on or in connection with the applied for goods, namely, "Humidifiers; Humidifiers for household purposes; Air humidifiers," to cause confusion, cause mistake, or to deceive with respect to Plaintiffs' senior AQUAOASIS mark.

102.    Plaintiffs have standing to seek refusal of the '000 Application for the LEVOIT OASIS MIST PRO mark because Plaintiffs have senior trademark rights in the AQUAOASIS Marks, and Defendants' attempted registration of the infringing LEVOIT OASIS MIST PRO mark is likely to cause consumer confusion as to the source of Defendants' goods with Plaintiffs.

103.    Pursuant to 15 U.S.C. §§ 1052 and 1119, Plaintiffs request an order of this Court refusing registration of the '000 Application.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for this Court to grant the following relief:

A.    Entry of a judgment that Defendants have violated Sections 32, 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and have committed acts of unfair competition in violation of New York common law;

B.    Injunctive relief restraining Defendants and their agents, servants, employees, successors and assigns, and all others in concert and privity with Defendants, from:

    i.    Using orally, in writing or in any media the name, word or mark AQUAOASIS or any other name, word or mark confusingly similar to the AQUAOASIS Mark (including, without limitation, OASISMIST, OASIS MIST, LEVOIT OASISMIST, or LEVOIT OASIS MIST PRO) on or in connection with the advertisement, promotion, marketing, offering, distribution, provision or sale of any goods, services or business;

    ii.    Falsely designating the origin, sponsorship, or affiliation of the Defendants' goods in any manner;

    iii.    Falsely advertising Defendants' products by misidentifying their qualities or features on Amazon.com or elsewhere;

    iv.    Otherwise unfairly competing with Plaintiffs; and

v.  Continuing to perform in any manner whatsoever of the acts complained of herein.

C.      An order requiring Defendants to recall from all channels of trade, distribution, exhibition and display all infringing products, advertising displays, signs, labels, goods, product packaging, promotional materials, advertisements, commercials, web sites, and other items, the dissemination or display by Defendants of which would violate the injunction requested herein;

D.      An order requiring Defendants to remove listings for infringing product from all websites and deliver up for destruction any and all goods, product packaging, promotion materials, advertisements, commercials and other items in the possession, custody or control of Defendants, their related companies, and affiliates which, if sold, displayed or used, would violate the injunction requested herein;

E.      An order requiring that, pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), Defendants serve upon Counterclaimants within thirty (30) days after service on Defendants of an injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

F.      An order requiring an accounting of all gains, profits, savings and advantages realized by Defendants from their aforesaid trademark infringement, false designation of origin, false or misleading representations, and unfair competition;

G.      An award to Plaintiffs of such damages as Plaintiffs shall establish in consequence of Defendants' aforesaid acts of trademark infringement, false designation of origin, false or misleading representations, and unfair competition, including three times the

amount found as actual damages by the trier of fact to properly compensate Plaintiffs for their damages pursuant to 15 U.S.C. § 1117(a);

H.     An order requiring Defendants to pay to Plaintiffs punitive damages in connection with Plaintiffs' common law unfair competition claim;

I.     An order declaring that this is an exceptional case, pursuant to 15 U.S.C. § 1117 or otherwise as allowed by law, because of the willful and deliberate nature of Defendants' acts of trademark infringement, false designation of origin, false or misleading representations, and unfair competition;

J.     An order directing the USPTO to refuse registration of the '989 Application (or to cancel the registration resulting therefrom);

K.     An order directing the USPTO to refuse registration of the '000 Application;

L.     An award of damages for Defendants' acts of trademark infringement, false designation of origin, false or misleading representations, and unfair competition and that those damages be trebled due to Defendants' willfulness in accordance with the provisions of 15 U.S.C. § 1117.

M.     An award to Plaintiffs of their attorneys' fees pursuant to 15 U.S.C. § 1117 or otherwise as allowed by law;

N.     An award to Plaintiffs of their costs and expenses of this action; and

O.     Such other and further relief as the Court shall find just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby request trial by jury on all issues so triable.

Dated:  October 31, 2022

Respectfully submitted,

TARTER KRINSKY & DROGIN LLP

By:  *s/ Tuvia Rotberg*
Tuvia Rotberg
Sandra A. Hudak
1350 Broadway
New York, NY  10018
Tel.:     (212) 216-8000
Fax:      (212) 216-8001
E-mail:  trotberg@tarterkrinsky.com
            shudak@tarterkrinsky.com

*Attorneys for Plaintiffs Super Equities*
*Holdings LLC and Super Equities LLC*